ROBERT PRICE AND FRED MATTHIS *v.* COMMONWEALTH.

[Abstract Kentucky Law Reporter, Vol. 4—618.]

**Criminal Law—Indictment for Manslaughter.**

Time is not a material ingredient of the offense of manslaughter, and an indictment is not bad when it charges that the offense was committed on the ——— day of ———, 188—, for by such charge it is shown that the offense was committed before the return of the indictment. Especially is this shown by the use of the terms "did feloniously * * * kill," etc.

**Self-Defense.**

In order to justify a killing on the grounds of self-defense, the person assailed must actually believe or be convinced that he is in danger, but he is not bound to have more than reasonable grounds to base his belief or conviction on.

APPEAL FROM HARDIN CIRCUIT COURT.

January 13, 1883.

OPINION BY JUDGE HARGIS:

The appellants were jointly indicted, tried and convicted of the offense of voluntary manslaughter, and in pursuance of the verdict were sentenced to the penitentiary for the period of ten years each, and they have appealed, asking a reversal upon a number of grounds.

It appears from the evidence that the appellants and deceased, Murphy, were in Elizabethtown the evening he was killed, drinking and tippling at different places. At one place the appellant, Matthis, was accused of attempting to get Murphy drunk for the purpose of whipping him. This he denied, and said "he" or "they" could whip him without that, but he persisted in Murphy's taking another drink when even the barkeeper had said he had enough. The three, after some altercation, went off together "arm in arm." Shortly pistol shots, cursing and threats were heard. Next morn-

ing Murphy was found dead near by, with several shots in his face and body and his skull broken.

The evidence introduced by the state shows that Matthis and Murphy began fighting, and that Matthis shot him while Price struck him and otherwise aided Matthis, who also struck the blow that broke Murphy's skull with a slat freshly torn from a fence close to the spot where the tragedy was enacted. There was countervailing evidence which tended to show that Matthis fought in self-defense and Price acted the part of peacemaker, but the evidence, considered as a whole, authorized the verdict.

It is insisted that the indictment is defective because it states that the offense was committed on the ―― day of ――, 188―, and therefore does not show the offense was committed at any possible time before the indictment. Time is not a material ingredient of the offense charged, and it does appear that the offense was committed before the finding of the indictment, because the allegation charging the act constituting the offense used the imperfect or past tense, that the appellants "did feloniously * * * kill Thomas Murphy by shooting him," etc. Read with proper grammatical construction and common sense, the reader would necessarily conclude that the offense was committed before the time of the finding of the indictment, which is all that Crim. Code (1876), § 129, makes essential as to the time at which the offense was committed. *Commonwealth v. Miller,* 79 Ky. 451, 3 Ky. L. 231.

Although the commonwealth's attorney in his opening statement may have falsely stated that the appellants had fled, as there was no effort to prove the assertion and it was virtually admitted that they did not flee, it was not error to refuse to allow the appellants to prove that Matthis said the morning after the killing when he left home that he was going after a cane mill and would be back that evening.

Pat H. Carter testified fully, and the court excluded from the jury the objectionable matter called for by the commonwealth, and we can not determine what was the purpose of the attorney for the commonwealth in calling aloud for the jailer and sheriff to be brought into court. If that functionary's conduct was in contempt of the rules of the court there was a proper mode of placing the question before this court, if it affected the rights of the appellants, which has not been done. The testimony of Brownfield that Murphy's character was good in 1869, and before, was competent, as he

stated enough facts to show he ought to be able to speak of his character, which the appellants had put in issue.

Instruction No. 4 was substantially like No. 3, and as both contained the law of self-defense there is no room for complaint on that ground. The discretion belonging to belief has reference to the existence of reasonable grounds for belief which must exist in all cases to justify the use of dangerous means of self-defense. The assailed must actually believe or be convinced that he is in danger, but he is not bound to have more than reasonable grounds to base his belief or conviction on. Hence we do not think the court erred in giving instruction No. 4. The instructions, considered together, gave the appellants the benefit of the whole law applicable to the facts of this case, and placed their defense plainly before the jury for their consideration.

Wherefore the judgment is *affirmed*.

*Wilson & Hobson, for appellants.*

*P. W. Hardin, for appellee.*.