## Armstrong v. Commonwealth.

March 10, 1942.

Charles Ferguson for appellant.

Hubert Meredith, Attorney General, and Wm. F. Neill, Assistant Attorney General, for appellee.

Opinion of the Court by Judge Rees—Reversing.

The appellant, Bob Armstrong, has been convicted of aiding and abetting one Warren H. Belt in the commission of the crime of malicious striking and wounding another with a deadly weapon with intent to kill. His punishment was fixed at imprisonment for a term of two years.

Warren H. Belt, Lewis Bagley, Tye A. Cobb, and appellant were indicted jointly and were accused of striking and wounding C. B. Scarbrough, jailer of Livingston county. At the time the offense was committed they were confined in the Livingston county jail on felony charges. It is admitted that Belt made a vicious assault on the jailer, striking him on the head several times with a club, and that appellant was present, but it is insisted that the evidence for the Commonwealth fails to show that he took any part in the assault or aided or assisted Belt in any manner. Evidence tending to connect appellant with the crime was somewhat meager, but was sufficient to take the case to the jury.

The jailer testified that on the evening of March 6, 1941, between 8 and 8:30 o'clock, he went into the jail and the four accused men were sitting on the floor in a cell playing cards. There was a small bench in the aisle outside of the cell, and one of the group asked the jailer if they could have the bench. He unlocked the cell door and Warren Belt stepped out, walked about 8 feet, and got the bench. When he returned to the cell door he dropped the bench and hit the jailer several times on the head with a club which he had picked up in the aisle. Concerning appellant's connection with the attack, the

jailer testified as follows: "He came out and I didn't see him, I couldn't see anything, the blood was in my eyes and I had this coat on and he felt this pocket and asked where the gun was." It was the jailer's practice to carry a gun in his pocket when he went in the jail where the cells were located, and appellant and the other prisoners knew of this practice. The jailer was again asked what Armstrong said and did, and he answered: "He asked where the gun was, felt my pocket, had his hand in my pocket." Alec Aydelette, an inmate of the jail, was introduced as a witness by the Commonwealth. He stated that he saw Scarbrough when he entered the jail, and that the four accused men were in a cell. One of them asked for the bench, and the jailer said: "I will see if I have the keys." He unlocked the door, and Belt stepped out and got the bench, assisted by Armstrong. Belt dropped the bench and struck the jailer, and Armstrong and the others ran out of the jail. Walter Brown, another inmate of the jail, testified that a day or two before the attack on the jailer he saw Armstrong, Belt, and Cobb talking in a cell, and when he went in either Belt or Cobb told him they were "talking private." He did not hear any of their conversation. Appellant, Belt, Bagley, and Cobb escaped from the jail after the attack on Scarbrough, but all were arrested a few days later. Appellant denied that he took any part in the affray or that he had any knowledge of the plan to attack the jailer. Belt and Cobb testified that they had planned to break out of jail, but Armstrong knew nothing concerning the plan. There was ample evidence from which the jury might reasonably infer that appellant aided and assisted Belt in the attack on Scarbrough.

After appellant had testified, the Commonwealth introduced several witnesses who testified that appellant's reputation for truth and veracity in the neighborhood in which he lived was bad. It is argued that the court erred in failing to admonish the jury as to the effect of this testimony, but appellant did not request an admonishment and, in the absence of a motion to admonish the jury and an exception to the ruling of the court in the event the motion is overruled, the question is waived. Clair v. Commonwealth, 267 Ky. 363, 102 S. W. (2d) 367; Wright v. Commonwealth, 267 Ky. 441, 102 S. W. (2d) 376; Hedrick v. Commonwealth, 267 Ky. 481, 103 S. W. (2d) 111; Shorter v. Commonwealth, 248 Ky. 37, 58 S. W. (2d) 224.

Appellant's criticism of the indictment presents a more serious question. In the accusatory part of the indictment the defendants are accused of the crime of "unlawfully, wilfully, and feloniously striking and wounding another with a deadly weapon with intent to kill." In the descriptive part of the indictment it is charged that the defendants "did unlawfully, wilfully, feloniously, and maliciously strike and wound C. B. Scarbrough with a deadly weapon * * * with the felonious and malicious intent to kill him." The indictment also charges in the descriptive part that Belt struck the first blow with the club and the others "were then and there present aiding, abetting, counseling, advising, and assisting him in so doing." The felony of which appellant was convicted is defined by Section 1166 of the Kentucky Statutes, which reads in part: "If any person shall willfully and maliciously * * * strike * * * another with a * * * deadly weapon with intention to kill * * * he and any person who aided, counselled, or advised or encouraged him, shall be confined in the penitentiary not less than two or more than twenty-one years." In the accusatory part of the indictment the word "maliciously" is omitted, and the offense named therein is the common law offense of assault and battery, a misdemeanor, while the crime described in the body of the indictment is a felony defined by Section 1166 of the Kentucky Statutes. Coates v. Commonwealth, 235 Ky. 683, 32 S. W. (2d) 34. The trial court properly overruled appellant's demurrer to the indictment, since it did allege a public offense, though, at most, only a misdemeanor, assault and battery. While the modern rule of disregarding mere technical deficiencies in indictments has been adopted by this court, yet it has uniformly held that an indictment must substantially conform to established principles and rules of criminal pleading. Section 124 of the Criminal Code of Practice requires an indictment to be direct and certain as regards the party charged, the offense charged, and the particular circumstances of the offense. Section 126 of the Criminal Code provides that an indictment, except in certain cases not pertinent here, must charge but one offense. In Privett v. Commonwealth, 233 Ky. 471, 26 S. W. (2d) 3, the indictment in its accusatory part named the offense of arson, while the descriptive part charged the defendant with the commission of one of the offenses denounced by Section 1168 of the Kentucky Statutes, namely, that of wilfully and

maliciously burning the storehouse of another. The indictment was held insufficient because the crime named in the accusatory part did not correspond to the one described in the descriptive part. In Gregory v. Commonwealth, 226 Ky. 617, 11 S. W. (2d) 432, the accusatory part of the indictment accused the defendants of the crime of sedition, a crime defined by Section 2 of Chapter 100 of the Acts of 1920, while the descriptive part of the indictment set out the crime defined by Section 7 of the same act. The indictment was held insufficient because the accusatory and descriptive parts did not cover the same offense. To the same effect are Puckett v. Commonwealth 264 Ky. 577, 95 S. W. (2d) 242; Miller v. Commonwealth, 248 Ky. 717, 59 S. W. (2d) 969; Acree v. Commonwealth, 243 Ky. 216, 47 S. W. (2d) 1051; Commonwealth v. Phoenix Amusement Company, 241 Ky. 678, 44 S. W. (2d) 830; Deaton v. Commonwealth, 220 Ky. 343, 295 S. W. 167. What has been said is not in conflict with the opinion in Maggard v. Commonwealth, 287 Ky. 787, 155 S. W. (2d) 228. In that case it was said that an indictment should be read and considered as a whole, and if, when so read and considered, it substantially conforms to the rules of the Code in respect to the matters therein pointed out as material and necessary, it will be a good indictment. We adhere to that salutary rule, but when the indictment in the instant case is considered as a whole it cannot be said it is direct and certain as to the offense charged. The defendant had no way of knowing whether he was charged merely with the misdemeanor, assault and battery, named in the accusatory part, or the statutory felony alleged in the descriptive part. The indictment is good, however, to the extent that it charges a misdemeanor, since the descriptive part covers the misdemeanor named in the accusatory part but goes further and describes a felony defined by Section 1166 of the Statutes. The latter was surplusage, and did not invalidate the indictment so far as the misdemeanor was concerned. The court should have instructed only on the misdemeanor charge, and it was error to give the felony instruction.

The court failed to give an instruction under Section 239 of the Criminal Code of Practice which provides "if there be a reasonable doubt of the degree of the offense which the defendant has committed, he shall only be convicted of the lower degree." If the felony instruction had been warranted under the indictment, failure

to give the instruction to which the defendant was entitled under Section 239 of the Criminal Code of Practice would have constituted reversible error. Sewell v. Commonwealth, 284 Ky. 183, 144 S. W. (2d) 223; Ball v. Commonwealth, 278 Ky. 52, 128 S. W. (2d) 176; Turner v. Commonwealth, 267 Ky. 74, 101 S. W. (2d) 214.

For the reasons indicated, the judgment is reversed, with directions to grant appellant a new trial, and for further proceedings consistent herewith.